[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-14275

_____

BETTY WADE,
in her capacity as Personal Representative of the Estate of David
Henegar,

Plaintiff-Appellant,

*versus*

CINDY MCDADE, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:18-cv-00192-AT

_____

Before WILLIAM PRYOR, Chief Judge, and WILSON, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, BRASHER, ABUDU, and TJOFLAT,* Circuit Judges.

NEWSOM, Circuit Judge, delivered the opinion of the Court, in which WILLIAM PRYOR, Chief Judge, WILSON, JORDAN, ROSENBAUM, JILL PRYOR, BRANCH, GRANT, LUCK, LAGOA, BRASHER, ABUDU and TJOFLAT, Circuit Judges, joined.

JORDAN, Circuit Judge, filed a concurring opinion, in which ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges, joined.

ROSENBAUM, Circuit Judge, filed a concurring opinion in which JILL PRYOR and ABUDU, Circuit Judges, joined.

NEWSOM, Circuit Judge, filed a concurring opinion.


NEWSOM, Circuit Judge:

We granted rehearing en banc to resolve a question that, while simply stated, has bedeviled panels of this Court for the better part of the last three decades: "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?" For reasons we'll explain, we now hold, in accordance with the Supreme Court's decision in *Farmer v. Brennan*, that in addition to an "objectively serious" deprivation, a deliberate-indifference plaintiff must show that the defendant acted with "subjective

---

* Senior Circuit Judge Gerald B. Tjoflat elected to participate in this decision pursuant to 28 U.S.C. § 46(c).

reclessness as used in the criminal law," 511 U.S. 825, 839 (1994), and that in order to do so, the plaintiff must demonstrate that the defendant actually knew that his conduct—his own acts or omissions—put the plaintiff at substantial risk of serious harm.  We add the caveat, likewise prescribed by *Farmer*, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he cannot be found liable under the Cruel and Unusual Punishments Clause if he "responded reasonably to th[at] risk."  *Id.* at 844.

## I

Because we took this case en banc solely to clarify our inconsistent precedent and to answer a discrete question of law, and because we will remand for application of the Eighth Amendment standard that we adopt, we needn't belabor the particular facts of this case.  It will suffice for present purposes to say that over a four-day period in August 2016, during his incarceration at Walker State Prison in Georgia, an inmate named David Henegar failed to receive his daily seizure medication, Dilantin, which he had been prescribed to treat epilepsy.  Late on the fourth day, Henegar suffered two seizures that he said caused him permanent brain damage.  *See Wade v. McDade*, 67 F.4th 1363, 1366–69 (11th Cir. 2023), *vacated and reh'g en banc granted*, 83 F.4th 1332 (11th Cir. 2023).

Proceeding under 42 U.S.C. § 1983, Henegar sued five prison employees—two corrections officers and three nurses—arguing that by failing to ensure that he got his Dilantin they had exhibited "deliberate indifference" to his medical needs in violation of the Eighth Amendment.    The district court granted summary

judgment to all defendants on the ground that they were entitled to qualified immunity. In particular, the court held that even if one or more of the defendants had violated the Constitution, the law in August 2016 was insufficiently "clearly established" to give them fair notice of the unlawfulness of their conduct: "Assuming Defendants' conduct here constituted deliberate indifference to a serious medical need in violation of Plaintiff's Eighth Amendment rights, Plaintiff has failed to point to any law applicable to the circumstances presented in this case that clearly established the alleged violation of Plaintiff's rights." Doc. 168 at 31.

Shortly after the district court rendered its decision, Henegar died from causes unrelated to the seizures that he suffered while in prison. Betty Wade—Henegar's sister and the personal representative of his estate—assumed responsibility for his suit, and on appeal she contended that the district court had erred in granting the defendants summary judgment. A panel of this Court affirmed the district court's decision on the ground that Wade hadn't shown that the prison officials violated Henegar's Eighth Amendment rights, without reaching the question whether those rights were sufficiently "clearly established" to defeat qualified immunity. *See Wade*, 67 F.4th at 1374–78. Importantly for present purposes, in the course of so doing, the panel noted a deep and entrenched intracircuit split concerning one of the necessary elements of an inmate's deliberate-indifference claim. In particular, the panel observed that "[f]or more than 25 years now, our case law regarding a deliberate-indifference claim's mens rea element has been hopelessly confused, resulting in what we'll charitably call a 'mess.'" *Id.*

at 1371.  More particularly still, the panel explained that our decisions had "flip-flop[ped] between two competing formulations"—one requiring an inmate to show that a prison official acted with "more than *mere* negligence," and the other requiring proof that he acted with "more than *gross* negligence." *Id.*  Applying its best understanding of the prior-panel-precedent rule, the panel held that a deliberate-indifference plaintiff must demonstrate, among other things, that the defendant "acted with more than *gross* negligence." *Id.* at 1374.

A majority of the active judges of this Court subsequently voted to vacate the panel's opinion and rehear the case en banc. *See Wade v. McDade*, 83 F.4th 1332 (11th Cir. 2023).  We instructed the parties "not [to] concern themselves with the application of the 'prior panel precedent rule'" and directed them instead to address the following question of law:  "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?"

Sitting as a full Court, we now answer that question.

## II

In relevant part, the Eighth Amendment forbids the "inflict[ion]" of "cruel and unusual punishments."  U.S. Const. amend VIII.  The Supreme Court first held in *Estelle v. Gamble* that the Cruel and Unusual Punishments Clause should be understood to prohibit government officials from exhibiting "deliberate indifference to [the] serious medical needs of prisoners."  429 U.S. 97, 104–

05 (1976). In *Farmer v. Brennan*, the Court later clarified that "a prison official violates the Eighth Amendment only when two requirements are met." 511 U.S. 825, 834 (1994). As an initial matter, the Court said, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. (citation omitted). Separately, the Court explained, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind"—*i.e*., "deliberate indifference." *Id*. (citations omitted). All here agree that Henegar's unmedicated epilepsy presents an objectively serious medical need and, therefore, that *Farmer*'s first requirement is satisfied. This case requires an assessment of *Farmer*'s second, "deliberate indifference" requirement.

For decades, our own precedent has been marred by internal inconsistency regarding the showing that a prison inmate must make to demonstrate that prison officials were deliberately indifferent in violation of the Eighth Amendment. We have typically subdivided *Farmer*'s deliberate-indifference requirement into three sub-requirements. First, we have said, the inmate must prove that the official was subjectively aware that the inmate was at risk of serious harm. *See, e.g.*, *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020). Second, we have held that the inmate must show that the official disregarded that risk. *See, e.g.*, *id*. And third—enter the dissonance—we have said that the inmate must demonstrate that the official acted with more than some requisite level of negligence. With respect to this third sub-requirement, our precedent reflects a persistent split between cases holding that the inmate must prove that the official's conduct reflected "more than

21-14275                Opinion of the Court                7

*mere* negligence" and those holding that the inmate must demonstrate that the official acted with "more than *gross* negligence." *See Wade*, 67 F.4th at 1371.

In light of the intracircuit split, we granted rehearing en banc to clarify "the standard for establishing liability on an Eighth Amendment deliberate-indifference claim." Having reconsidered the issue, we now repudiate our dueling "more than" formulations and hold instead that a deliberate-indifference plaintiff must prove that the defendant acted with "subjective recklessness as used in the criminal law," *Farmer*, 511 U.S. at 839, and that in order to do so, the plaintiff must show that the defendant was subjectively aware that his own conduct put the plaintiff at substantial risk of serious harm—with the caveat that, in any event, a defendant who "respond[s] reasonably" to a risk, *id.* at 844, even a known risk, "cannot be found liable" under the Eighth Amendment, *id.* at 837.

## A

We lost our way—and bollixed our caselaw—by straying from *Farmer*, so we begin with a detailed review of the Supreme Court's decision there. It was in *Farmer* that the Court first set out to explain the "deliberate indifference" standard that it had earlier adopted in *Estelle*. The Court held that even if the Eighth Amendment was originally understood to apply only to "punishments" imposed as part of a criminal conviction and sentence, the caselaw had since "settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under" that provision. *Id.* at 832 (quotation marks omitted).

The Court clarified, however, that not every injury suffered by an inmate at the hands of his jailors violates the Constitution. Rather, the Court said, "a prison official violates the Eighth Amendment only when two requirements are met." *Id.* at 834. To satisfy the first, the Court explained, the inmate must establish that the deprivation he allegedly suffered was "objectively, 'sufficiently serious.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The second requirement," the Court emphasized, "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id.* (quoting *Wilson*, 501 U.S. at 297). Focusing its attention on this second requirement, the *Farmer* Court held that "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind"—namely, it said, "'deliberate indifference.'" *Id.* (citation and internal quotation marks omitted). Accordingly, the Court clarified, "[t]he question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Id.* at 843 (citation omitted).

Importantly for our purposes, the *Farmer* Court then "undert[ook] to define" the "proper test for deliberate indifference." *Id.* at 834. The Court began by observing that, on the one hand, "deliberate indifference describes a state of mind more blameworthy than negligence" but, on the other, "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835. The Court noted that "[w]ith deliberate indifference lying somewhere between the

poles of negligence at one end and purpose or knowledge at the other," the lower courts had "routinely equated deliberate indifference with recklessness." *Id*. at 836. That was correct as far as it went, the *Farmer* Court said, but it didn't "fully answer the . . . question about the level of culpability deliberate indifference entails" because, the Court explained, "the term recklessness is not self-defining." *Id*. The "civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is *either known or so obvious that it should be known*." *Id*. (emphasis added). By contrast, the "criminal law . . . generally permits a finding of recklessness only when a person disregards a risk of harm *of which he is aware*." *Id*. at 836–37 (emphasis added).

The *Farmer* Court expressly "reject[ed] . . . [the] invitation to adopt an objective test for deliberate indifference" of the sort employed in the civil law and held instead that the Eighth Amendment requires proof of "subjective recklessness as used in the criminal law." *Id*. at 837, 839. A subjective-recklessness standard, the Court repeatedly emphasized, "comports best with the text of the Amendment as our cases have interpreted it." *Id*. at 837. In particular, the Court said, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id*. at 838. "[A] subjective approach," the Court stressed, "isolates those who inflict punishment," and thus

"ensure[s] that only inflictions of punishment carry liability." *Id.* at 839, 841.

Having settled on and explained the subjective-recklessness standard, the *Farmer* Court then appended a coda of sorts: Even a "prison official[] who actually knew of a substantial risk to inmate health or safety may be found free of liability if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Put slightly differently, a "prison official[] who act[s] reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.* at 845.

**B**

Helpfully, the parties here agree on several key points. First, they agree that *Farmer* adopted a criminal-recklessness standard, which requires the plaintiff inmate to prove that the defendant prison official *actually knew* of a substantial risk of serious harm, not just that he *should have known*. *See, e.g.*, Br. of Appellant at 12 (observing that *Farmer* prescribes a "criminal recklessness standard"); Br. of Appellee 2 ("criminal recklessness"); Reply Br. of Appellant at 2 ("The parties agree . . . [that] the standard to prove deliberate indifference is criminal recklessness."). Second, and relatedly, the parties agree that we should scrap our confusing negligence-based formulations—whether "more than mere" or "more than gross"—in favor of a return to *Farmer*'s criminal-recklessness benchmark. *See, e.g.*, Br. of Appellant at 26–32; Br. of Appellee at 2, 19, 32. Finally, they agree that even if a prison official had the requisite subjective awareness of the risk to the inmate, he cannot be held liable

under the Eighth Amendment if he responded reasonably to that risk. *See, e.g.,* Br. of Appellant at 26; Br. of Appellee at 34–36.

The parties' key disagreement pertains to the identification of the "risk" of which the prison officials must have been subjectively aware. Is it sufficient, as Wade contends, that the official knew that the inmate *faced* a substantial risk of serious harm, whatever its cause or origin? Or, as the state insists, must the inmate show instead that the official knew that his own conduct—his own acts or omissions—*caused* a substantial risk of serious harm to the inmate?

Wade maintains that she need only show here that the prison officials knew "that Mr. Henegar faced a substantial risk of serious harm because he was not receiving his seizure medication" and then failed to take reasonable steps to secure it for him. Br. of Appellant at 37; *accord, e.g.,* Reply Br. of Appellant at 5 (arguing that a prison official need only "be aware that the inmate was not receiving medication necessary to manage [a] medical condition"). So, for instance, Wade asserts that it is enough that the corrections officers were "aware that Mr. Henegar's Dilantin was missing" and, similarly, that two of the nurses "were aware that Mr. Henegar was not receiving his medication." Br. of Appellant at 38, 40; *see also, e.g., id.* at 41 (asserting that two nurses "were aware of the missing medication").

For its part, the state insists that Wade's position "analyzes the subjective awareness of a serious risk of harm at far too high a level of generality." Br. of Appellee at 23. "A generalized

awareness of a medical need," the state contends, "is not enough." *Id.* at 19. Rather, the state says, "to make out a deliberate indifference claim" under *Farmer*'s criminal-recklessness standard," the "*risk* of which an official must be subjectively aware is a risk based on his *own* action or inaction." *Id.* at 20 (second emphasis added); *id.* at 30 ("[A] general awareness of a problem is not sufficient—there needs to be a specific awareness that the problem requires the officer's action."). Accordingly, the state contends, in a case like this one, which alleges that various prison officials neglected to do something, *Farmer* requires proof that the "prison official [was] subjectively aware . . . *that his inaction will cause* an excessive risk of harm." *Id.* at 2 (emphasis added); *accord, e.g., id.* at 4 ("[A]n official must *know* that by failing to perform some act, *he or she is putting* the inmate at a substantial risk of serious harm." (emphasis added)); *id.* at 6 ("The question is whether an official *knows* that *his specific decision not to act will cause or maintain* an exceedingly high risk of injury." (second emphasis added)).

For several reasons that we'll explain in turn, we hold that a deliberate-indifference plaintiff must show that the defendant official was subjectively aware that his own conduct—again, his own actions or inactions—put the plaintiff at substantial risk of serious harm.

**1**

The first and most important reason for requiring a deliberate-indifference plaintiff to show that the defendant subjectively

knew that his own conduct caused a substantial risk of serious harm is that *Farmer* is best understood to adopt that rule.

The suit there was brought by a male-to-female transgender inmate complaining about the dangers posed by the inmate's placement in the general population of a men's prison. *See* 511 U.S. at 829–30. The Supreme Court summarized the inmate's operative complaint as follows: "[R]espondents either transferred petitioner to [a different prison,] USP-Terre Haute or placed petitioner in its general population despite knowledge that the penitentiary had a violent environment and a history of inmate assaults, and despite knowledge that petitioner, as a transsexual who 'projects feminine characteristics,' would be particularly vulnerable to sexual attack by some USP-Terre Haute inmates." *Id.* at 830–31; *see also id.* at 849 (reciting the plaintiff's contention that "each defendant showed reckless disregard for my safety by designating me to said institution knowing that I would be sexually assaulted"). Significantly, the inmate's allegations—and thus the Court's decision concerning those allegations—were trained not just on the risks of violence and assault that *exist* in a prison's general population, but rather on the risks that the prison officials *created* by placing the inmate in a particular prison's general population.

Against the backdrop of the inmate's allegations, it's unsurprising that, on balance, the *Farmer* Court couched its analysis in terms of an assessment of the prison officials' subjective awareness of the particular risk posed by their own conduct. True, the Court's opinion at times refers generically to the risk that an inmate

"face[s]." *Id.* at 843, 847. Notably, though, the Court framed "[t]he question under the Eighth Amendment" more precisely: "[W]hether prison officials, acting with deliberate indifference, *exposed* a prisoner to a sufficiently substantial 'risk of serious damage to his future health.'" *Id.* at 843 (emphasis added) (citation omitted). Other passages of the Court's opinion likewise emphasize the inextricable link between a prison official's conduct and his knowledge of the risk created thereby. *See, e.g.*, *id.* at 842 ("Under the test we adopt today, an Eighth Amendment claimant [must] show . . . that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."); *id.* at 845 ("[T]he subjective factor, deliberate indifference, should be determined in light of the prison authorities' current attitudes and conduct." (citation omitted)). The Court's focus, it seems to us, was on whether the official knew that his own conduct—again, his own acts or omissions—put the inmate at risk, not just whether the inmate confronted a risk in the abstract. *Cf. Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) (interpreting *Farmer* to require proof that "in addition to subjectively recognizing [the] substantial risk, the prison official must also subjectively be aware that his actions were inappropriate in light of that risk" (citations and internal quotation marks omitted)).

Any doubt about *Farmer*'s import, we think, is resolved by the Supreme Court's persistent emphasis on the language of the Eighth Amendment and the strictures that its terms impose. The Cruel and Unusual Punishments Clause, of course, regulates only the "inflict[ion]" of "punishment," U.S. Const. amend. VIII, and the

21-14275                Opinion of the Court                15

Court repeatedly stressed the limited scope of the text's prohibition, *see, e.g.*, 511 U.S. at 837–39, 841, 844.  So, for instance, as already noted, the Court observed that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'" but only "cruel and unusual 'punishments,'" *id.* at 837, and, to that end, stressed that the governing liability standard should "ensure[] that only inflictions of punishment carry liability."  *Id.* at 841; *accord, e.g.*, *Wilson*, 501 U.S. at 300) ("The infliction of punishment is a deliberate act intended to chastise or deter.  This is what the word means today; it is what it meant in the eighteenth century." (citation and internal quotation marks omitted)).  Indeed, the Court emphasized that the *whole point* of adopting a "subjective approach" to deliberate indifference—which, underscoring a defendant's individual culpability, it imported from the criminal law—was to "isolate[] those who inflict punishment" within the meaning of the Eighth Amendment.  *Farmer*, 511 U.S. at 839.  Absent a particularized focus on a prison official's subjective awareness of the risk created by his own conduct, there is a danger that he could be held liable for conduct that does not remotely resemble the "inflict[ion]" of "punishment[.]"

**2**

Separately, only a rule trained on a prison official's subjective awareness of the risk caused by his own conduct—rather than some preexisting risk—can account for, and sensibly apply to, the full range of deliberate-indifference cases.

Needless to say, there's only one Eighth Amendment, and only one deliberate-indifference standard. But deliberate-indifference claims come in different varieties. Some, like this one, give rise to what might be called "inaction" cases—they challenge prison officials' failure to do something. So, for instance, Wade's principal allegation is that the guards and nurses at Walker exhibited deliberate indifference to Henegar's medical needs when, knowing that he suffered from epilepsy, they neglected to ensure that he received his Dilantin, and thus "failed to provide him any proper medical care or access to medical care." Doc. 129 at 22.[1] Other deliberate-indifference claims, by contrast, give rise to what we'll call "action" cases—they target prison officials' affirmative misconduct. Imagine, for instance, a guard who, fed up with an inmate's noncompliance, fires his gun toward the ceiling, only to have the bullet ricochet off a pipe and kill another prisoner. Or a warden who requires inmates to clean the prison yard in subzero temperatures, resulting in an otherwise-healthy prisoner's sickness and eventual death. Or an official who orders an inmate to clean a latrine with a mixture of bleach and ammonia, which causes permanent respiratory damage. *Cf. Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (holding that prison guards acted with deliberate

---

[1] Pure "inaction" cases—in which a deliberate-indifference defendant is alleged to have done literally *nothing*—will likely be few and far between, and indeed, Wade at times frames her own case in "action" terms. *See, e.g.*, Oral Arg. at 7:43 *et seq.* (arguing that the prison officials here "decided to take an action" in response to Henegar's condition but faulting that action as constitutionally inadequate).

indifference when they handcuffed an inmate to a "hitching post" and thereby "knowingly subjected him to a substantial risk of physical harm"); *Taylor v. Rojas*, 592 U.S. 7, 7–10 (2020) (holding that guards exhibited deliberate indifference toward an inmate's health and safety when they "confined him in a pair of shockingly unsanitary cells").

In a case that, like this one, can be framed in "inaction" terms, it's tempting to focus, as Wade does, on some preexisting risk that the inmate plaintiff faced, without regard to its origin or cause—here, for instance, the risk of epileptic seizure. Wade's position, though, misses two important nuances. For starters, even in a so-called "inaction" case, the relevant "risk" will rarely, if ever, exist in a vacuum; it will almost always result from something a prison official either does or doesn't do. To use this case as an example, all seem to agree that the substantial risk to Henegar's health resulted not from epilepsy *itself*, but rather from the fact that his epilepsy *went untreated*.[2] And according to the allegations here, Henegar's epilepsy went untreated because the prison officials at Walker failed to procure his Dilantin—that is, because the officials misstepped. So even here, where the deliberate-indifference claim

---

[2] *See, e.g.*, Oral Arg. at 2:15 *et seq.* (Wade: "Petitioner here is not arguing for a standard in which a prison official could be liable if he is simply aware that an inmate has a medical condition; there's not necessarily a risk there. The risk attaches when an inmate who has a medical condition is uncontrolled—it's the lack of medication, it's the lack of care, that creates the risk.").

can be cast in "inaction" terms, the relevant risk is inextricably tied to the defendants' own conduct.

More fundamentally, Wade's focus on preexisting risk can't possibly apply to "action"-based deliberate-indifference cases. In those, the reviewing court *must* assess the defendant's knowledge by reference to the risk created by his own conduct—for the simple (and obvious) reason that there was no preexisting risk of which a prison official might have been subjectively aware; by definition, the risk didn't materialize until the official acted. And that's a problem for Wade's proposed rule. In view of the fact that the same Cruel and Unusual Punishments Clause provides the source of constitutional protection in both the "action" and "inaction" contexts, the *Farmer* Court repeatedly observed that the deliberate-indifference standard applies similarly in both kinds of cases. *See* 511 U.S. at 836 ("acting or failing to act"), 837 ("act or omission"), 842 ("acted or failed to act"). Accordingly, if the deliberate-indifference inquiry in an "action" case necessarily focuses on the official's subjective awareness of the risk created by his own conduct, as it most certainly does, it follows that the inquiry must retain the same focus even in cases, like this one, that can be framed in "inaction" terms.

### 3

The capper, it seems to us, is that focusing on a prison official's subjective awareness of the risk posed by his own conduct—rather than more vaguely on some allegedly preexisting risk—best squares with how courts and commentators have historically

understood and explained criminal recklessness, even outside the Eighth Amendment context. A leading criminal-law treatise, for instance, reports that "'[r]ecklessness' in causing a result exists when one is aware that *his conduct might cause* the result, though it is not substantially certain to happen." Wayne LaFave, *Substantive Criminal Law* § 5.4(f), at 507 (2018) (emphasis added). The Supreme Court has likewise underscored that criminal recklessness denotes a state of mind marked by one's subjective awareness of a risk that results from his own conduct. In *Voisine v. United States*, for instance, the Court described "reckless behavior" as comprising "acts undertaken with awareness of *their substantial risk of causing injury*" and explained that one acts "recklessly" when he consciously disregards "a substantial risk that *[his] conduct will cause harm to another*." 579 U.S. 686, 691, 694 (2016) (emphasis added). So too, in her recent plurality opinion in *Borden v. United States*, Justice Kagan explained that "[a] person acts recklessly, in the most common formulation, when he 'consciously disregards a substantial and unjustifiable risk' *attached to his conduct*, in 'gross deviation' from accepted standards." 593 U.S. 420, 427 (2021) (emphasis added) (citation omitted); *accord, e.g.*, *Counterman v. Colorado*, 600 U.S. 66, 79 (2023) (similar); *cf.* U.S.S.G. § 2A1.4 cmt. 1 (defining the term "reckless" as "a situation in which the defendant was aware of *the risk created by his conduct* and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the

standard of care that a reasonable person would exercise in such a situation" (emphasis added)).[3]

★  ★  ★

For all these reasons, we hold that in order to show that a defendant acted with "subjective recklessness as used in the criminal law," *Farmer*, 511 U.S. at 839, a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff.

### III

So, in sum, to the question we posed to the parties, "What is the standard for establishing liability on an Eighth Amendment deliberate-indifference claim?", we answer as follows:

---

[3] For that matter, even *civil* recklessness—which, unlike criminal recklessness, entails an objective "should have known" gloss—focuses on the defendant's awareness of the risk posed by his own conduct:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that *his conduct creates an unreasonable risk* of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (quoting Restatement (Second) of Torts § 500 (1964)) (emphasis added).

1.   *First*, of course, the plaintiff must demonstrate, as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" *Id*. at 834 (citation omitted).

2.   *Second*, the plaintiff must demonstrate that the defendant acted with "subjective recklessness as used in the criminal law," *id*. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." *Id*. at 844–45.

We remand to the panel for application of this standard to the facts of this case.

**REMANDED.**

21-14275                JORDAN, J., Concurring                    1

JORDAN, Circuit Judge, joined by ROSENBAUM, JILL PRYOR, and ABUDU, Circuit Judges, Concurring.

Judge Newsom's opinion for the en banc court correctly sets out the subjective component of the deliberate indifference standard announced by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994), and goes some way in bringing clarity to our Eighth Amendment jurisprudence. I therefore join the opinion.

I write separately on four matters. Three are doctrinal and the fourth is practical.

First, our decision today does not make deliberate indifference completely subjective on the defendant's part. As the court explains, "a plaintiff must demonstrate that the defendant acted with 'subjective recklessness as used in the criminal law,' [*Farmer*, 511 U.S.] at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant 'actually knew of a substantial risk to inmate health or safety,' he 'cannot be found liable under the Cruel and Unusual Punishments Clause' if he '*responded reasonably* to the risk.' *Id*. at 845–46." Maj. Op. at 21 (emphasis added).

We have held that the reasonable response component of deliberate indifference is objective and not subjective: "Deliberate indifference 'has two components: one subjective and one objective. [A] plaintiff must show both that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm and that the defendant disregard[ed] that known risk by

failing to respond to it in an (objectively) reasonable manner.'" *Mosley v. Zachary*, 966 F.3d 1265, 1270 (11th Cir. 2020) (citation omitted). And we have consistently recognized and confirmed this duality over the last two decades. *See Bowen v. Warden, Baldwin State Prison*, 866 F.3d 1312, 1320 (11th Cir. 2016); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

The objective component makes sense, for it is part of criminal recklessness, the standard the Supreme Court adopted in *Farmer*. *See, e.g.,* Model Penal Code § 2.02(2)(c) (Am. Law Inst. 1985) ("A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.*") (emphasis added); Nelson E. Roth & Scott E. Sundby, *The Felony-Murder Rule: A Doctrine at Constitutional Crossroads*, 70 Cornell L. J. 446, 453 n.40 (1985) ("Reckless behavior under the Model Penal Code involves both subjective and objective elements. The actor must 'consciously disregard . . . a substantial and unjustifiable risk,' and such disregard must constitute a 'gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'") (quoting § 2.02(c) of the Model Penal Code). Moreover, in other constitutional scenarios

reasonableness is generally an objective assessment. *See, e.g., Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) ("Fourth Amendment reasonableness 'is predominately an objective inquiry.'") (citation omitted). Today's opinion focuses on the subjective component of deliberate indifference, but does not address the objective component.

Second, a defendant's subjective knowledge need not be established by direct evidence or admissions. As with knowledge in other areas of the law, subjective awareness of a substantial risk of harm can be proven (or an issue of material fact created) through circumstantial evidence. *See, e.g., Regalado Cuellar v. United States*, 553 U.S. 550, 567 n.8 (2008) ("In many cases, a criminal defendant's knowledge or purpose is not established by direct evidence but instead is shown circumstantially based on inferences drawn from evidence of effect. *See, e.g.,* 1 W. LaFave, Substantive Criminal Law § 5.2(a), p. 341 (2d ed. 2003). Specifically, where the consequences of an action are commonly known, a trier of fact will often infer that the person taking the action knew what the consequences would be and acted with the purpose of bringing them about."). *Farmer* itself makes this very point when discussing deliberate indifference under the Eighth Amendment:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Cf.*

[1 W.] LaFave & [A.] Scott, [Substantive Criminal Law] § 3.7, p. 335 [(1996)] ("[I]f the risk is obvious, so that a reasonable man would realize it, we might well infer that [the defendant] did in fact realize it; but the inference cannot be conclusive, for we know that people are not always conscious of what reasonable people would be conscious of"). For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk."

511 U.S. at 842–43 (some internal citations omitted).

Especially on summary judgment, where we must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor, *see Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019), circumstantial evidence of the obviousness of the risk can create an issue of fact and/or support a decision in the plaintiff's favor. *See, e.g., Brown v. Hughes*, 894 F.2d 1533, 1538–39 (11th Cir. 1990) (finding that a genuine issue of material fact precluded summary judgment when the plaintiff claimed that the prison official was present when his foot began to "swell severely" the plaintiff told the official that "his foot felt as

though it were broken," and the official never called for medical help); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1328–29 (11th Cir. 2007) (holding that a reasonable jury could conclude that a prison captain was deliberately indifferent in failing to respond to an inmate for a week, where the inmate complained that she was leaking amniotic fluid and that she had miscarried in a similar way before). Moreover, because we cannot make credibility determinations or weigh the evidence at summary judgment, *see Baker v. Upson Regional Medical Center*, 94 F.4th 1312, 1317 (11th Cir. 2024), testimony by a defendant that he was unaware of the plaintiff's medical condition or of the risk created by his own inaction does not warrant summary judgment his favor when that testimony is rebutted by evidence that the condition and associated risk of inaction were apparent. *See, e.g., Brown*, 894 F.2d at 1538–39 (finding that a genuine issue of material fact precluded summary judgment on the issue of defendant's subjective awareness, even when the defendant denied seeing the inmate's broken foot or being told that his foot was broken); *Goebert*, 510 F.3d at 1328–29 (finding that a genuine issue of material fact precluded summary judgment on the issue of defendant's subjective awareness, despite the defendant's stated belief that the inmate was lying).

Third, today's opinion does not concern the Eighth Amendment deliberate indifference standard for municipalities under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 638 (1978), and *City of Canton v. Harris*, 489 U.S. 378 (1989). *Farmer* set out the deliberate indifference standard for individuals who are sued for Eighth Amendment violations, and today's opinion does

6                    JORDAN, J., Concurring                    21-14275

the same. In setting out the standard for individuals, the Supreme Court in *Farmer* explained that the deliberate indifference standard for municipal liability is objective, and then rejected the use of that standard for individuals. *See Farmer*, 511 U.S. at 841 ("It would be hard to describe the *Canton* understanding of deliberate indifference, permitting liability to be premised on obviousness or constructive notice, as anything but objective. *Canton's* objective standard, however, is not an appropriate test for determining the liability of prison officials under the Eighth Amendment as interpreted in our cases.").

Our cases view the Eighth Amendment deliberate indifference standard for municipalities as objective. *See, e.g., Young v. City of Augusta*, 59 F.3d 1160, 1172 (11th Cir. 1995) (alleged denial of medical care for inmate with mental illness: "Before it may be said that a municipality has made a deliberate choice among alternative courses of action, its policymakers must have had 'actual *or constructive notice* that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens.'" (emphasis added) (citing *Canton*, 489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part), which was in turn cited with approval in *Farmer*, 511 U.S. at 841). And so do commentators. *See* 1 Sheldon H. Nahmod, Civil Rights and Civil Liberties Litigation § 3:32 (2023–24 edition) ("The *Farmer* Court's emphasis on the essentially subjective nature of deliberate indifference in a prison setting with respect to individual liability bears repeating, especially since the Court sharply distinguished it from what it termed the objective nature of the deliberate indifference inquiry

21-14275                JORDAN, J., Concurring                7

in a local government failure to train context where the focus, pursuant to *City of Canton v. Harris*, is on the state of mind of a *governmental* entity. According to the Court, the *City of Canton* inquiry into deliberate indifference focuses on liability based on obviousness or constructive notice.") (emphasis in original and footnote omitted); Barbara Kritchevsky, *A Return to Owen: Depersonalizing Section 1983 Municipal Liability Litigation*, 41 Vill. L. Rev. 1381, 1436 (1996) ("*Farmer* categorizes *Canton*'s deliberate indifference standard as objective").

Fourth, there remains an important practical point. What is one to do with our post-*Farmer* cases using the "more than mere negligence"/"more than gross negligence" formulations that we now discard? Despite today's opinion, district courts and attorneys will, out of necessity, continue to turn for guidance to our deliberate indifference cases from the last 30 years. They will not be able to pretend that Eleventh Circuit jurisprudence constituted a vast Eighth Amendment lacuna during that period. For example, they will look to earlier cases to try to figure out whether a right was clearly established for purposes of qualified immunity. My suggestion, for whatever it might be worth, is that courts and attorneys look carefully at prior Eleventh Circuit cases to see if they are consistent with the subjective component of deliberate indifference set out in *Farmer*. If they are consistent, then they should continue to be cited as binding precedent. If they are not, then they probably have been abrogated to at least some degree by today's decision.

21-14275        ROSENBAUM, J., Concurring        1

ROSENBAUM, Circuit Judge, joined by JILL PRYOR, and ABUDU, Circuit Judges, Concurring:

A state eliminates all expenditures for prisoners' medical care—not to punish the prisoners but instead simply to use the money for something else.  As a result, a father in prison dies of rheumatic fever, brought on by an untreated strep throat he caught from another prisoner.  A mother who's not up to date on her vaccinations dies from tetanus after cutting herself on a rusty piece of metal in the prison.  And an eighteen-year-old kid dies of MRSA he picked up in his cell.  Of course, the state recognized when it eradicated the prison medical budget that, because of its actions, at least some prisoners were likely to needlessly die or suffer life-changing illnesses and conditions.  But it never *intended to punish* prisoners by eliminating medical treatment.

The Newsom Concurrence's interpretation of the Eighth Amendment allows all of this because the state didn't intend to punish prisoners when it eradicated medical care.  *See* Newsom Concurrence.

That's just wrong.  It fails to account for two independent aspects of the Eighth Amendment's text.

First, the Newsom Concurrence does not fully reckon with the nature of "punishment."  Prison, for instance, is not some abstract idea—it necessarily comes with a set of living conditions.  And so it is pure sophistry to divorce, at the very least, any life-threatening or human-rights-threatening aspects of those living

conditions from the punishment of "prison" if the state knows of those conditions when it requires a person to stay in a prison.

And second, the Newsom Concurrence reads "cruel and unusual" out of the Eighth Amendment. After all, even a punishment that is not intended to be cruel and unusual may become so when the state knows that the conditions that necessarily attend the sentence disintegrate below "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)—whether the state intends those conditions to be part of the punishment or not. So a simple sentence of prison may not, in theory, violate the Eighth Amendment. But it can become cruel and unusual if, for instance, the state knows that prisoners will receive no medical treatment for life- or limb-threatening illnesses, diseases, or conditions and instead will have to suffer until they die or become disabled from a treatable condition.

So while I concur in today's opinion for the Court, I disagree strongly with the Newsom Concurrence. And I write separately to point out the errors and dangers in that Concurrence's theory. Section I of this Concurrence explains why the Newsom Concurrence fails to account for the nature of "punishment" in its Eighth Amendment analysis. And Section II shows that the Newsom Concurrence improperly reads "cruel and unusual" out of its Eighth Amendment interpretation.

## I.

Precedent teaches what common sense instructs: when the state punishes a person through imprisonment, its "punishment"

21-14275            ROSENBAUM, J., Concurring            3

includes the state's failures to prevent certain harms to those in its custody.

To see this, we must understand what constitutes the "punishment" of imprisonment. Imprisonment is *not*, as the Newsom Concurrence seems to posit, a psychological construct defined by the state's "intent." *Cf.* Concurring Op. at 9. Rather, imprisonment is a concrete "deprivation of . . . liberty," bounded by cell walls and armed guards. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Spicer v. Williamson*, 131 S.E. 291, 293 (N.C. 1926)).

This deprivation includes both compulsions and restrictions. Prisoners are compelled, among other things, to be in particular places at particular times—they are assigned to live in a particular cell in a particular prison. And prisoners are restricted from engaging in certain activities and obtaining some goods and services (either through explicit prohibitions or as the practical effect of the compulsions I've mentioned). In other words, prisoners are forced to endure the living conditions of their prison and are deprived of the independent capacity to obtain medical care. Though not all the conditions of confinement constitute "punishment," *see Wilson v. Seiter*, 501 U.S. 294, 301 n.2 (1991), those conditions that prison officials know about "compose the punishment." *Rhodes*, 452 U.S. at 347; *see also Wilson* at 301 n.2.

That said, of course, certain deprivations are not—and indeed, constitutionally cannot be—part of the punishment of imprisonment. The Supreme Court has long tied the Eighth Amendment's prohibition of "cruel and unusual punishments" to the

"evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion).  No wonder.  The definition of what's "cruel" depends on these "standards of decency."  That is, we consider a punishment to be "cruel" in no small part *because* it fails to comport with "standards of decency."

*Estelle* recognized that these standards of decency incorporated an "obligation to provide medical care for those whom [the state] is punishing by incarceration."  429 U.S. at 103.  That is because "the prisoner . . . cannot by reason of the deprivation of his liberty . . . care for himself." *Id.* (quoting *Spicer v. Williamson*, 131 S.E. 291, 293 (N.C. 1926)).  As Chief Justice Rehnquist wrote for the Court, "when the State . . . so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits of state action set by the Eighth Amendment . . . ." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989).  In the context of the state's near-total control over prisoners' lives, the state takes on the obligation to provide medical care—*precisely because it cannot constitutionally punish criminals by preventing them from obtaining care*.[1]

---

[1] One odd result of the Newsom Concurrence's view is that the Cruel and Unusual Punishments Clause could bar the state from punishing a criminal by forbidding him from receiving any medical care while otherwise allowing him to go free but still permit the state to imprison that person in a facility that just so happens not to offer any way to obtain care, even though the latter punishment includes and is worse than the former.

21-14275          ROSENBAUM, J., Concurring          5

For this reason, the state's punishment of imprisonment does not include a prohibition on receiving medical care, because it constitutionally cannot. But when prison officials knowingly fail to meet the state's obligation to provide medical care—an obligation that, once again, arises from the "state action" of imprisonment that prevents those behind bars from obtaining their own care, *DeShaney*, 489 U.S. at 200—that failure becomes part of the punishment of prison.

The Newsom Concurrence says that "punishment" requires an "element of intentionality." Concurring Op. at 2. But the state's "punishment" is prison, and the state very much intends prisoners to stay there. (Watch what happens when one tries to leave.) The Newsom Concurrence doesn't explain why this isn't enough intent for known life- or human-rights-threatening conditions accompanying a prison sentence to be part of the punishment.

In fact, the Newsom Concurrence never even tries to explain why the state's punitive intent must be so specific as to extend to its failure to try to stop medically preventable tragedies among its wards. And why stop there? The Newsom Concurrence also doesn't explain why, under its theory, an even more granular notion of intent would not be necessary to violate the Eighth Amendment. A prison doctor punitively denies treatment for a prisoner's serious and festering infection, intending that the prisoner will suffer overnight and the doctor will treat the infection the next day, but the prisoner dies before morning. Is this punishment? At the very least, the death part isn't under the Newsom Concurrence

because the doctor didn't intend for the prisoner to die as punishment. Yet any competent doctor knows that the longer a serious infection festers, the more life- and limb-threatening it can become. Defining punishment solely by "intent to punish" does little to clarify what *mens rea* is necessary for official (in)action to constitute a punishment, let alone clarify what, generally, is a punishment.

To the extent the Newsom Concurrence's intent requirement is vague, perhaps it is because it fits oddly within our system of separated powers to think of prison officials having an independent intent to punish their wards. The legislature determines the punishments for crimes; the judiciary determines when a punishment should be imposed. At the federal level, the Bureau of Prisons carries out these punishments, "ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost-efficient, and appropriately secure." *About Our Agency*, Fed. Bureau of Prisons, https://perma.cc/JSN4-PCD7. But prison administration, collectively and individually, does not take "vengeance" or enact "retribution" for crimes, because (unlike the legislature and judiciary) it does not act in light of its own evaluation of wrongdoing.[2] To say otherwise would make prison officials

---

[2] The exception is when a prison official determines how to sanction a prisoner for that prisoner's misconduct *within* prison. But of course, this proves the rule: generally, prison officials are not intending to punish in the sense of having a purpose to deter or chastise particular conduct.

21-14275          ROSENBAUM, J., Concurring                    7

judges or legislators, weighing whether a prisoner's crimes merit particular deprivations.[3]

So perhaps it's not surprising that precedent makes clear that that prison officials don't need some specific punitive intent for their actions or inactions to be part of the "punishment" they are administering.  Instead, when government officials responsible for carrying out punishment deliberately fail to provide prisoners with necessary medical treatment that the state does not intend to withhold as punishment, that failure becomes part of the punishment.

## II.

The Newsom Concurrence's crabbed misunderstanding of "punishment" is related to its other analytic error: reading "cruel and unusual" out of the Cruel and Unusual Punishments Clause.

The Concurrence has little to say about the "cruel and unusual" part of the Eighth Amendment.  But the phrase preceding "punishments" is critical to its meaning, not least because "cruel" seems a more natural place to find a scienter requirement than "punishment."

---

[3] Another way to conceptualize this issue is to note that the Eighth Amendment incorporates an "*anti-discretion* norm," stretching back to the 1689 English Bill of Rights.  Donald A. Dripps, *The "Cruel and Unusual" Legacy of the Star Chamber*, 1 J. AM. CONST. HIST. 139, 143 (2023) (emphasis in original).  When prison officials act with deliberate indifference towards prisoners' serious medical needs, they go beyond their limited discretion in administering criminal sentences.

After all, during the Bill of Rights era, "cruel" meant "[p]leased with hurting others; inhuman; hard-hearted; void of pity; wanting compassion; savage; barbarous; unrelenting," or, "[o]f things," "[b]loody; mischievous, destructive; causing pain." *See* 1 Samuel Johnson, *Dictionary of the English Language* 518 (6th ed. 1785). These definitions—all of them, but especially words and phrases like "inhuman," "hard-hearted," "void of pity," and "wanting compassion"—point to a particular attitude towards the suffering of others; they don't necessarily mean proactively trying to increase suffering, but rather, being deliberately indifferent to pain that most others would seek to alleviate, if they had the power and (especially) the responsibility to do so. This attitude, of course, is precisely what the "deliberate indifference" touchstone for prison medical-mistreatment claims captures. *Estelle*, 429 U.S. at 104.

Why deliberate indifference as the standard, rather than negligence or intent? The Supreme Court has suggested that mere accidents, the products of negligence, do not result from "the culpable state of mind necessary for the punishment to be regarded as 'cruel.'" *Wilson*, 501 U.S. at 297. That's because cruelty inheres in not only an action's physical effects but also its emotional content. Everyone—and maybe especially a prisoner—knows the difference between an accident and the type of deliberately indifferent conduct revealing a deep disregard for his basic wellbeing. When that disregard comes from someone who is both responsible for and in control of another's health, it can only be described as cruel. Indeed, the message sent by a prison guard who repeatedly ignores his ward's pleas for necessary medical attention is not unlike the

21-14275               ROSENBAUM, J., Concurring                    9

one the torturer sends to his victim upon the rack: "I see your pain but I don't care."[4]

But this also shows why prison officials' actions need not be intentional to be cruel and unusual. Imprisonment punishes by substituting control for liberty. Ordinarily, that control is accompanied by some degree of care, including medical care. But when one's captor opts not to provide necessary and available medical care, he turns the punishment of imprisonment into a cruel one—regardless of his purpose or intent in not providing treatment. After all, what difference does it make to the prisoner whether the official who controls his wellbeing *intends* him to suffer or simply *does not care* if he does? Either way, his outcome will be the same, and there is little he can do to change it. And the prisoner will, by state mandate, remain dependent for his basic needs on someone who is at best indifferent to those needs. To impose upon someone that sort of existential uncertainty is cruel and unusual; when the state does it to a prisoner, it is cruel and unusual punishment.

**III.**

---

[4] This also explains the Supreme Court's adoption of the criminal law's standard for recklessness—requiring the defendant's subjective awareness of a substantial risk—rather than the civil law's objective standard in deliberate-indifference claims (which are, after all, civil). *See Farmer v. Brennan¸* 511 U.S. 825, 837–39 (1994). A warden who knows of and ignores a substantial risk is cruel; a warden who should have known of a risk is incompetent and hardly "commend[able]," but not cruel. *Id.* at 838. The latter says, "I can't care for you;" the former, "I don't care about you."

10                    ROSENBAUM, J., Concurring                    21-14275

Our justice system routinely asks lawbreakers to "take responsibility for their actions." But the Newsom Concurrence's view of the Eighth Amendment would allow prison officials to avoid responsibility for theirs. And by letting off the hook those who actually administer the state's punishments, this view seeks to absolve all of us—judges, legislators, citizens—of responsibility for what happens in the state-run facilities we call prisons. As today's decision reiterates, our Constitution demands more.

21-14275                 Newsom, J., Concurring                 1

NEWSOM, Circuit Judge, concurring:

Today, the Court wisely repudiates its long-confused deliberate-indifference caselaw, which has for years bounced around between "more than mere negligence" and "more than gross negligence" standards, and adopts instead the criminal-recklessness test prescribed by the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994). It's an important step toward righting our Eighth Amendment jurisprudence.

I'd like, though, to explore a more foundational question: Is *any* negligence- or recklessness-based standard consistent with the plain language of the Eighth Amendment, which by its terms applies only to the "inflict[ion]" of "punishments"? The answer, I think, is pretty clearly no. Just as a parent can't accidentally punish his or her child, a prison official can't accidentally—or even recklessly—"punish[]" an inmate.[1]

**I**

The Eighth Amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. To my mind, it is

---

[1] In response to Judge Rosenbaum's concurring opinion, *supra*, I'll say only this: Perhaps she has convinced some that the position I lay out here is unpalatable; she hasn't convinced me, at least, that it's *wrong*, as a matter of either the Eighth Amendment's plain text or its original understanding. *Cf. Hillcrest Prop., LLP v. Pasco Cnty.*, 915 F.3d 1292, 1303 (11th Cir. 2019) (Newsom, J., concurring in the judgment) ("Not everything that s[tink]s violates the Constitution.").

fairly well-established that, as originally understood, the Amendment's Cruel and Unusual Punishments Clause prohibited only certain particularly objectionable methods of punishment imposed in conjunction with a criminal defendant's judgment of conviction. It did not, for instance, entail a proportionality principle that empowered judges to determine that a particular penalty was excessive in relation to a particular crime, nor did it purport to regulate the conditions of a prisoner's confinement. I won't reinvent the wheel; I'll simply say that I find myself persuaded by Justice Scalia's thorough analysis in *Harmelin v. Michigan*, 501 U.S. 957, 961–85 (1991) (Scalia, J.); *see also, e.g.*, Anthony F. Granucci, *Nor Cruel and Unusual Punishments Inflicted: The Original Meaning*, 57 Calif. L. Rev. 839 *passim* (1969). Be that as it may, the Supreme Court has moved on. It has read the Clause more broadly, not only to embrace a proportionality criterion, *see Gregg v. Georgia*, 428 U.S. 153, 172 (1976), but also to "appl[y] to some deprivations that were not specifically part of the sentence but were suffered during imprisonment," *see Wilson v. Seiter*, 501 U.S. 294, 297 (1991), and, even more generally, to embody a fuzzy, eye-of-the-beholder "evolving standards of decency" criterion, *see Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion).

It remains the case, though, that the Eighth Amendment, by its plain terms, applies only to "punishments." And whatever the proper understanding of the phrase-of-art "cruel and unusual punishments," the word "punishment[]" had—and has—a settled meaning. Samuel Johnson's 1785 English dictionary, for instance, defined it as "[a]ny infliction or pain imposed in vengeance of a

crime." 2 Samuel Johnson, *Dictionary of the English Language* 424 (6th ed. 1785). And nearly two centuries later, Americans were still using the term in fundamentally the same way to mean a "[p]enalty [or a] retributive suffering, pain, or loss." *Punishment*, Webster's New International Dictionary (2d ed. 1934). It seems undeniable to me that both of those definitions—and others like them—denote an element of intentionality. And that seems all the more undeniable in the specific context of the Eighth Amendment, which addresses not just "punishments" simpliciter, but their "inflict[ion]," a term that likewise indicates purposeful, directed conduct. *See* 1 Samuel Johnson, *Dictionary of the English Language* 1040 (6th ed. 1785) (defining "inflict" to mean "[t]o put in act or impose as punishment"); *accord* Noah Webster, *An American Dictionary of the English Language* 968 (1828) ("Inflict, *verb transitive*: To lay on; to throw or send on; to apply; as, to *inflict* pain or disgrace; to *inflict* punishment on an offender.").

To be clear, I'm hardly the first person to make this observation about the Cruel and Unusual Punishments Clause's text. Writing for the Second Circuit in *Johnson v. Glick*, Judge Friendly emphasized that "[t]he thread common to all [Eighth Amendment] cases is that 'punishment' has been deliberately administered for a penal or disciplinary purpose." 481 F.2d 1028, 1032 (2d Cir. 1973). Even more directly to the point, Judge Posner has explained, pointing to what he called "normal meaning[]," that "[t]he infliction of punishment is a deliberate act intended to chastise or deter." *Duckworth v. Franzen*, 780 F.2d 645, 651–52 (7th Cir. 1985). That, he correctly said, "is what the word means today; it is what it meant in the

eighteenth century."  *Id.* at 652 (citing Samuel Johnson, *Dictionary of the English Language* (1755)).  And Justice Scalia, writing for the Supreme Court in *Wilson v. Seiter*—citing and quoting, among others, Judges Friendly's and Posner's observations and adding his own emphasis for good measure—indicated that the Eighth Amendment entails an "intent requirement" and clarified that "[t]he source of t[hat] requirement is not the predilections of this Court, but the Eighth Amendment itself, which bans only cruel and unusual *punishment*."  501 U.S. at 300.[2]

The unmistakable linguistic fact that the term "punishment" entails an intentionality element would seem to preclude *any* legal standard that imposes Eighth Amendment liability for unintentional conduct, no matter how negligent (whether "mere[ly]" or "gross[ly]" so) or even criminally reckless.  Negligence and recklessness, after all, are expressly defined *in contradistinction to* intentional conduct.  *See, e.g.*, *Negligence*, Black's Law Dictionary (10th

---

[2] Tellingly, even those who contend that the constitutional term "cruel" should be understood by reference to a punishment's effect on the punished, rather than to the punisher's particular motivation, acknowledge my fundamental point—that, by definition, "all punishment involves intent."  John F. Stinneford, *The Original Meaning of "Cruel"*, 105 Geo. L.J. 441, 479 (2017).  They admit that under "the Eighth Amendment's intent requirement," "[t]o violate the Cruel and Unusual Punishments Clause, some government official must intend to punish"; they just deny that the Clause requires the further proof that the official "intend[ed] to punish *cruelly*."  *Id.* at 493 (emphasis added).  *Accord, e.g.*, John F. Stinneford, *Is Solitary Confinement a Punishment?*, 115 Nw. L. Rev. 9, 17 (2020) (reviewing historical and modern definitions of "punishment" and concluding that the term "involves intent to inflict pain or suffering, [just] not necessarily culpable intent").

ed. 2015) ("[A]ny conduct that falls below the legal standard established to protect others against unreasonable risk of harm, *except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights*." (emphasis added)); *Recklessness*, *id*. ("Recklessness involves a greater degree of fault than negligence *but a lesser degree of fault than intentional wrongdoing*." (emphasis added)).

So on a plain reading, the Cruel and Unusual Punishments Clause applies *only* to penalties that are imposed intentionally and purposefully.

## II

How is it, then, that we now find ourselves grinding over which among several negligence- or recklessness-based standards should govern a particular species of Eighth Amendment claim? When and where did things go so wrong? It started innocently enough, with *Estelle v. Gamble*, 429 U.S. 97 (1976), in which the Supreme Court minted what it dubbed (and we still call) a "deliberate indifference" claim under the Eighth Amendment. There, the Court was *pretty* good about minding the line between intentional and negligent conduct—but it sowed seeds that would later flower into a clean break from the text's intentionality criterion. On the one hand, the *Estelle* Court made clear that ordinary negligence does not constitute "punishment" within the meaning of the Eighth Amendment: Neither "[a]n accident" nor "an inadvertent failure to provide adequate medical care," it said—even one that would give rise to a "[m]edical malpractice" claim—crosses the constitutional line. *Id*. at 105–06. And, in fact, in describing the

types of conduct that could "manifest[]" sufficiently culpable conduct, the Court twice adverted to purposeful actions: prison guards "*intentionally* denying or delaying access to medical care or *intentionally* interfering with the treatment once prescribed." *Id*. at 104–05 (emphasis added). On the other hand, though, the Court also repeated language from its "evolving standards of decency" line of decisions asserting that the "unnecessary and *wanton* infliction of pain" could give rise to an Eighth Amendment claim. *Id*. at 103 (emphasis added) (quoting *Gregg*, 428 U.S. at 173). "Wanton"-ness is a heightened mental state, to be sure, but it's *not* the same thing as intent or purpose.

Next came *Wilson v. Seiter*, to which I've already referred. Respectfully, *Wilson* is an odd opinion. The question there was whether an ordinary conditions-of-confinement claim should be decided under *Estelle*'s "deliberate indifference" standard—whatever its precise parameters—or instead under a higher standard that applies when "officials act in response to a prison disturbance," in which the complaining inmate must prove that officers acted "maliciously and sadistically for the very purpose of causing harm." 501 U.S. at 302 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In the course of its opinion, the Court nodded strongly toward a true intentionality criterion. As already noted, the Court stated that the source of what it called "the intent requirement" was "the Eighth Amendment itself, which bans only cruel and unusual *punishment*," *id*. at 300, and went on to quote favorably Judge Posner's definition of the term "punishment" as "a deliberate act intended to chastise or deter," as well as Judge Friendly's

observation that "punishment" is "deliberately administered for a penal or disciplinary purpose," *id*. (quoting *Duckworth*, 780 F.2d at 652, and *Glick*, 481 F.2d at 1032, respectively).

Strangely, though, having made the case—and a convincing one—that "[a]n intent requirement is . . . implicit in the word 'punishment,'" *id*. at 301, the *Wilson* Court then pivoted, in the second part of its opinion, to decide what it (somewhat inconsistently) presented as an open question: "[I]t remains for us to consider what state of mind applies in cases challenging prison conditions" as violative of the Eighth Amendment. *Id*. at 302. And in answer to that question, the Court deferred to language in its earlier decisions (including *Estelle*) rather than the language of the Constitution itself: "[O]ur cases say that the offending conduct must be *wanton*." *Id*. In particular, the *Wilson* Court said that the form of wantonness to which *Estelle* had adverted was sufficient: In the ordinary prison-conditions "context, as *Estelle* held, 'deliberate indifference' would constitute wantonness." *Id*.

Lastly—in the Supreme Court, anyway—came *Farmer*, the basis for today's decision. There, the Court set out to specify "the proper test for deliberate indifference," as adopted in *Estelle* and seconded in *Wilson*. 511 U.S. at 834. Canvassing its earlier caselaw, the Court opted for a standard "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other," settling on one that it loosely called "recklessness." *Id*. at 836. More precisely, as today's majority opinion explains, the *Farmer* Court embraced a *criminal*-recklessness standard, which, it

said, requires a complaining prisoner to prove that the prison official whose conduct he challenges subjectively "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id*. at 837. In justifying its choice, the Court repeatedly adverted to the Eighth Amendment's language—noting, for instance, that it "does not outlaw cruel and unusual 'conditions'" but only "cruel and unusual 'punishments.'" *Id*. It never explained, though, how the criminal-recklessness standard that it embraced followed from the text itself. Rather, the most the Court could muster was that "subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause *as interpreted in our cases*"—that is, as glossed in decisions like *Estelle* and *Wilson*. *Id*. at 839–40 (emphasis added). Having said so, the *Farmer* Court "adopt[ed]" criminal recklessness "as the test for 'deliberate indifference' under the Eighth Amendment." *Id*. at 840.

With *Farmer*, the retreat from the Eighth Amendment's "punishment" requirement—and the intentionality criterion that it indicates—was complete. And our own post-*Farmer* decisions only widened the gap between text and doctrine. For nearly three decades, we messed around with negligence-based tests—"more than mere," "more than gross," etc. Today, we have wisely—and finally—brought ourselves into compliance with *Farmer*'s criminal-recklessness criterion. It's an important step, but we—as what the Constitution calls an "inferior [c]ourt"—have now gone as far as we can go. If Eighth Amendment *doctrine* is to be brought into compliance with the Eighth Amendment's *text*, it'll be up to the

Supreme Court. As I see it, though, there's simply no denying that, as a matter of both language and logic, the Amendment's "punishment" requirement demands proof of intentionality.

### III

Maybe it makes sense to hold prison officials liable for negligently or recklessly denying inmates appropriate medical care. Maybe not. But any such liability, should we choose to recognize it, must find a home somewhere other than the Eighth Amendment. We—by which I mean the courts generally—have been ignoring that provision's text long enough. Whether we like it or not, the Cruel and Unusual Punishments Clause applies, as its moniker suggests, only to "punishments." And whether we like it or not, "punishment[]" occurs only when a government official acts intentionally and with a specific purpose to discipline or deter.